24-2104 and 2105 United States Securities & Exchange Commission v. Corp. Business I, Inc. et al. And I understand we're starting with Mr. Malazzo. Good morning, Your Honors. Christopher Malazzo, Sykensia Ross, Ferens Carmel for the appellants. And you would like to reserve three minutes, is that right? Correct. Very well. You may proceed. Okay. So this is an appeal arising out of an SEC enforcement action. The district court granted summary judgment in favor of the SEC, and then awarded after some hearings before Magistrate Aron, awarded civil penalties, disgorgement, officer director bar, and a penny stock bar. And the violations at issue here are for Section 5 of the Securities Act of 1933 and Section 17 of the Securities Act of 1933 and Section 10b of the Securities & Exchange Act. I'm going to, I think, to move this along, given my time, start with the issue of the civil penalties and disgorgement and rely more on the papers on the issue of whether summary judgment was properly granted. So the SEC first contends that because the appellants did not raise the issues we're raising here on the issue of civil penalties and disgorgement, that they have waived or they didn't raise it with objections to the magistrate's order or recommendation, that we waived it here. That is, the issue waiver is non-jurisdictional, and therefore this Court may excuse a failure to object on a certain ground. But it would be plain error review, though, right? It would be more plain error review. It's clear error from the magistrate. And just so that we're, we have a shared understanding of the record, you do agree that it was not, in fact, raised in the district court? I agree with that. Okay. That's fine. Thank you. The Court can hear if the issues are meritorious. And like Your Honor said, the magistrate was clearly in error. On the issue of the statute of limitations, which is for the civil penalties, Section 28, 28 U.S.C. Section 2462 requires a claim for a civil penalty to be brought within five years. And the first cause of action of that. Your argument depends on the idea that the clock starts running from the first sale. Is that, is that the statute of limitations argument? From when the claim first accrues. Or, yes, the first sale. And this is really pled here as one. Of course, the prohibition on selling unregistered securities says you can't do any sales, right? Like, you're not, he's not charged with a conspiracy. He's charged with doing a bunch of sales, right? Right. But don't the sales occur at different times? Well, they do occur at different times. But here, this is really pled as one cause of action. And, and it's. And don't, excuse me, don't some of the sales continue into the limitations period? There was, there was some sales in the limitations period. Yes. But like I said, here, here it's really pled as one cause of action. And it. But why isn't that, that's sort of generous of them, isn't it? I mean, they could have pled umpty ump counts, however many millions of shares of stock were, were sold. And they nicely confined the, the case to one global charge, right? Right. But, but the civil penalty, you know, civil penalty, it's, it's when the claim first accrues. And here. That begs the question.  So I think what Judge Lynch was suggesting is you could have had charges for each of the sales, right? There, there could have been. So they accrue at different times depending on when the sales occur. And you acknowledge that there are some sales in the limitations period. And there are after the, in the limitations period. And, and what penalties? I mean, there are, there are many situations, of course, in which there are multiple individual claims, criminal charges or civil claims, that are independent, each independent. So that when the, it may be that the damages or the penalties applicable to only the individual sales, for example, that took place within the limitations period were there. But that's not your argument. You're not trying to confine penalties to some specific amount of damages. No. Because that's not what it is here. What we're doing here is deciding in a regulatory quasi-criminal sort of way what penalties are appropriate for the course of conduct. Right. That was charged, right? Right. And whether. So you're saying, I guess I'm trying to clarify that you're not saying there's only penalties applicable to those sales. Well, that's, that's actually my next argument where I'm going next. I mean, that is. Excuse me. Is that what you're asking? Or are you saying there is only one claim. It accrued when the first sale took place. And therefore, there can be no penalties. Well, that's, that's what I'm saying. In the alternative, I am saying that they are, the SEC is limited in, in seeking the civil penalties to the wrongdoing or the misconduct that occurred within the five-year statute of limitations period. Because otherwise. Why should that be the case? And why would that make any sense at all? If, if someone engages in sales of unregistered stock yesterday as part of what is alleged to be, notwithstanding, I mean, it is a single substantive charge, but it is as part of a scheme that goes back for a long period of time, why would the regulators or a judge be constrained to pretend that the penalty is only for the sale of X number of shares? Why does the number of shares even matter? Well, because, because, I mean, we have the five-year statute of limitations for a civil penalty. They have other remedies. They have disgorgement. They have officer-director bars. So they have other remedies. But the remedy of civil penalty is limited to five years. Yeah. But your principal argument, in fact, treats this as a single cause of action. That's correct. And says they shall get nothing, because the entire course of conduct is time-barred since the first sale of stock was outside the limitations period. That's your principal argument. Just the civil, just the civil penalty. Yeah. Not the, not the other remedies. Well, wait, wait. Why, why is that? Why would that not be the case with disgorgement?  Because in that case, if you look at the penalty of disgorgement, it is the same kind of thing. If, and maybe even easier to see why there should be a limited period of disgorgement based on the statute of limitations, because disgorgement is a penalty that is sort of directly tied to the sales, the particular sale. How much money did you make from this sale? Because the penalties, it seems to be a different matter. Here, and what's relevant here is during the pendency of this action, the statute of limitations was changed for disgorgement. We have a 10-year statute of limitations for disgorgement. It's 10 years. In fact, if it were five years, it might matter when he received the money that he's going to disgorge. But you're not objecting that that's a five-year limitation. Correct. So on the other question, so I get the argument about whether the unregistered sales are one course of conduct. But for the purpose of your second argument, if we think that they're individual sales, then there is a sale during the limitations period in which there could be a civil penalty. Right. I know you have arguments against summary judgment, but for purposes of this argument, if we think it's true that your client directly or indirectly made those sales, why would it matter that, you know, his contribution to making the sales occurred before if, in fact, the sale occurred during the limitations period? Well, because of the — I mean, the five-year statute of limitations here, where the Court is saying you're limited, you're really — the Court has said that you're limited to the time period of the limitation period. Otherwise, the statute of limitations really has no meaning. Right. So let's say that each sale is a violation. Okay. Right? The idea is he's necessary — or he indirectly offers them for sales because he does all of his preparatory work for the sale.  So that means that he indirectly offered unregistered securities for sale during the limitations period. Right? Because he did all of his work, and it led to a bunch of sales, some of which are before and some of which are during the limitations period. Right? Right. But for the Tier 3 penalty, there has to be shown egregious conduct. And for that egregious conduct, what the courts did here, I think, from what it appears — and it's not necessarily crystal clear, but I think that's what they did — was they looked back to prior to the five-year statute of limitations and said the conduct back then was egregious. So we're assessing a Tier 3 civil penalty against Mr. Oppenheimer and core business one. And that, I'm alleging, is improper. It should not have been a Tier 3. They should not have been able to find — So if the statute of limitations were 10 years, then you could take into account the additional — the initial contribution to the unregistered sales? Then they would be able to take everything into account. Yes, if it was 10 years. So let's say it's five years, then even though his contribution to the unregistered sales occurred outside the limitations period, but the sale occurred within the limitations period, you're not allowed to pay attention to what he did? I mean — And that would mean that he couldn't even be liable, right? Well, no, not necessarily, because we do have — I mean, there are other remedies here. Okay. I mean, there's disgorgement. There's officer-director bars. So there are other remedies, and the legislature, for whatever reason, has decided to limit civil penalties to five years. Could I ask a question about the disgorgement penalty since, you know, you've used up with our assistance, of course, most of your time or all of your time on the other issue? I was a little struck by something. When I was reading the briefs, and the argument was — and I think this is your argument — that there was a failure to take into account the business expenses that were incurred in furtherance of the enterprise that led to the sum of money that Mr. Oppenheimer received through Core 1. Nothing in the brief alerted me to what the business expense — how big the business expenses were. And then when I looked at the exhibit, I saw that he was claiming to have incurred $630,000 approximately of expenses for an enterprise which apparently, it seemed to me from the record, for which he didn't do very much and didn't invoice anything in particular and didn't get paid practically anything except these payments that came in from this illegitimate sales of stock that amounted to $480,000. And I'm trying to figure out how that could possibly make any sense at all, that he would have incurred that many expenses. Whether that makes sense or not. And he did go through and put together a chart with the records he had. Well, he put together what he says is a chart that comes from the records he has, but none of those underlying records are put in. And having read his deposition, I can sort of understand why the magistrate judge might have thought that he was somewhat lacking in credibility. So, again, we are on plain error here. And you are saying that it was plainly erroneous for the magistrate judge not to take as a first approximation, at first value, at first glance, the amount of money that he took in, and then to discredit the somewhat imaginative claim that was made for an extraordinary amount of business expenses in connection with this one enterprise which Mr. Oppenheimer is sort of consistently downplaying how involved he was and how big a part of this was or wasn't of his other enterprises and businesses. I mean, there was another issue here under the discouragement, and it's the initial burden of the SEC. And that initial burden is they have to prove with a fair approximation of the profits, not the income, but the profits, that the defendants realized from this scheme. And — Well, there's the $480,000 that goes into his bank account, right? Undisputed. And so the only argument that that is not the profits is this idea that some of this was legitimate business expenses, right? But — And the district court, the magistrate judge and the district court, I guess, look at the spreadsheet he puts together that Judge Lynch described that doesn't have any underlying documentation and seems sort of implausible and just says it's not persuaded that those are legitimate business expenses, right? Well, we submit that it's the SEC's burden, since it had all the documents. It had the bank account statements. It had the canceled checks. There were documents there that — or must have been there that clearly show — Well, wait. We didn't say must have been. Must have been is a different query than there were. Documents that clearly show what the business expenses were.  You didn't show them. So — You want to say to tell us now that somebody else should have looked up and found these  That's what you're saying. It's the SEC's burden. No, the SEC's burden is to show us profits, and it's your burden as — well, your client's burden as the wrongdoer to show why the reasonable estimate is not grounded in fact. And it says any risk of uncertainty. We've said this. Falls on the wrongdoer, as long as the initial estimate is reasonable. So it was your client's burden to come up with the legitimate business expenses, and it didn't. Well — I mean, as far as we know, that spreadsheet is completely made up, right? Well, it's not. If you go and you look at the bank statements in the record and you compare it to the bank statements in the record, they line up. The ones I looked at, they lined up. It's not like these are — We're supposed to do this, and the magistrate judge presumably was supposed to do this, and the SEC was supposed to do this. But nothing in what is presented to us does any of that. It's a two-page argument that says, look, there were these business expenses, and points to that exhibit as the demonstration that there were business expenses that the SEC should have taken into account and tried to dissect as to what — I mean, maybe there are record — there would, I assume, be underlying records that show that a withdrawal from the bank account was made to pay United Airlines. That doesn't establish that there was a business travel that happened that is attributable to this — I keep wanting to say —  To this enterprise. To this enterprise. It's just — Can I ask you one other question? I'm sorry. Sure. In the very first summary judgment or motion to dismiss opinion, the very first opinion that Judge Daniels wrote, he said that $480,000 came to Corps One. $240,000 stayed there, and $240,000 went out back to Everrock. Is that how we pronounce it? Everrock, yeah. Everrock. That's not the argument you're making. You're not saying he only got $240,000. I'm not making that argument, no. That didn't really happen. And I'm not faulting Judge Daniels for that. It's just that was at a very initial stage. But I'm still puzzled that there was never an argument that — and it's not an argument made to us — that that was, in fact, the case and that he didn't get $480,000. He got $240,000. Well, I believe $240,000 went out. There's, I think, other arguments to not give him a credit against that. That's not what we're talking about here.  We have kept you considerably past your time, and thank you for that.  We will see you again, though, so don't go away. Why don't we hear from your counterpart for the appellee, Attorney Silverman.  May it please the Court, Stephen Silverman for the commission. The record amply supports the District Court's finding of summary judgment because there was no genuine dispute of fact. But I'm going to go ahead and turn to the remedies issues that my friend addressed. This Court should affirm the District Court's remedies determination, which was made following an evidentiary hearing and additional post-hearing briefing by the parties. Mr. Oppenheimer first addressed — excuse me — my friend first addressed the civil penalties issue. Mr. Oppenheimer waived the civil penalties issues that he now waives because he did not follow Rule 72b-2, which requires him to raise any objection to the magistrate's order in front of the District Court. And my friend agrees that — You may be using loose language. I think we may be using the words waive, too, but it's really more of a forfeiture, right? Waiver is usually a conclusive extinguishment of the right, right? A knowing abandonment. But this is really forfeiture, at least as far as your opponent is concerned, says that we still could review it for plain error in our discretion if we choose so. We need not. Would you agree with that, or do you think this is a hard-stop waiver? So I do think it does seem more like forfeiture, but this Court has used the waiver language in talking about — We do use it back and forth. And the magistrate judges use it, too. In the end of — as far as I'm aware, almost every one of these opinions or, rather, reports and recommendations, it says failure to object within 14 days is a waiver, further appellate review, although I suppose that could be read as saying, look, if you don't present this something, if you just, like, lie low, you can't just wait out a waiting period and then file a notice of appeal to the Second Circuit. Well, regardless, you don't think we lack the discretion to even consider the argument, right? I do think this Court has very — under very limited circumstances opted to consider an issue that is not — We get the argument about the waiver or forfeiture, but so what about the argument that there's a five-year statute of limitations and they can't — you can't seek the civil penalties? Well, I think, as Your Honors were discussing, the — a significant number of the sales of securities occurred within five years of the filing of the complaint. More than half of the sales occurred within five years of filing the complaint. Under the federal statute, 2462, because those sales occurred within five years of filing a complaint, and that's when a claim occluded under Section 5. All of his conduct, his contribution, occurred outside the limitations period. Well, first I would say that he did have conduct within the limitations period. In particular, he promoted securities within five years in July of 2010. And promotion is really in the heartland of the sale and offering of securities. So if there's any — and he also received payments related to the distribution of securities within the five-year period. So a lot of the argument about why he's necessary to the offer of the — or the sale of the unregistered securities was about his arranging for the reverse merger and the opinion letter and all of that. But you're saying — but for the later sales, even his promotion activity that occurred after the fact also makes him necessary to the offer for sale of the unregistered securities? Absolutely. I think that promotion is, like I said, really in the heartland of Section 5 when you're talking about the offer and sale of securities, promoting security is a key part of an unregistered offering or any offering of securities, including an unregistered offering. If he hadn't — if he hadn't done activities during the limitations period but sales occurred during the limitations period and we think the — or the district court determines that the conduct he engaged in before the limitations period was necessary to those sales, would that be enough? Yes. Because the claim accrues under Section 5 when a sale or an offer of securities finally occurs. And that occurred within five years. And then this Court has held multiple times that if a party makes steps necessary in that distribution, then they can be liable for the indirect or direct sale of the unregistered securities. That conduct — So because he did all of these steps at the outset, he's responsible for all the sales that occurred? Like even if, say, he, like, said at some point, I don't want to be a part of this anymore and left. It doesn't matter because he had set the whole thing up from the beginning? Yes, and I think that's consistent with this Court's decisions in Kavanaugh and in Kern, where we had two people who were involved in a distribution that occurred over a period of time, and the defendants tried to step back from the transaction before the distribution was complete. And this Court, as other courts have done, rejected the idea that you can avoid liability for a Section 5 claim by not participating in that final step of the distribution. You're liable for the necessary participation in the distribution and your necessary participation or steps necessary. Is there anything you could do to withdraw from the unregistered securities? Like, if he really wanted to say, I don't want to be a part of this anymore? Well, let me start by saying Mr. Oppenheimer is not arguing that he undertook the action. I know. I'm just curious about how this principle would work. So, like, just not him in, like, well, maybe him in particular. Is there anything he could have done to say, I don't want to be responsible for any further sales and cut that off? I imagine there's something he could have done. If you look to the criminal analogy of withdrawal from conspiracy, you can withdraw from a conspiracy and thereby, you know, terminate your involvement that would affect the limitations period. People often allege that and rarely can succeed in proving it because it's rather astringent. You have to not just stop doing things to further the conspiracy. You have to do something to try to stop the outcome, the wrongful outcome from taking place to which you have previously contributed. Like, for example, turn informant or try to persuade your co-conspirators to stop doing what they're doing. I'm not suggesting that that necessarily is or should be the rule here, but that would be one possible analogy that you could look to for determining is there some way of terminating your involvement. Like I said, I imagine that there are steps that someone could take. We haven't taken a position in this case on what that might be. In this case, he did not do that and, in fact, engaged in promotion during the limitations period. So it's the opposite of cutting and trying to say that I'm not part of these sales. And by the way, isn't it the promotion activities, albeit specific instances of the promotional activities, that really carry the sting here? Because it would seem to me that the sale of unregistered stock is a strict liability offense. And so provided that he does play a substantial role in those sales, the fact that he did so as an innocent dupe wouldn't defeat his liability. On the other hand, if you're looking to determine how large a penalty, the fact that he then continues to be involved in promoting the stock, including by what are alleged to be knowing false statements, isn't that really what makes this a Tier 3 penalty? Yes, Your Honor. And that's, again, that's what the magistrate and the district court, well, let me take a step back. The magistrate had an evidentiary hearing at which Mr. Oppenheimer was able to testify. And following that hearing, they were finding that he had engaged in knowing misconduct. That, you know, warranted a Tier 3 penalty, and the district court agreed. And this Court in Kern has, you know, allowed or, you know, certainly acknowledged that a Tier 3 penalty can be appropriate for a Section 5 violation. But it's not in the hearing or there to the merits of the case. But I notice you each referred to Judge Aaron as the magistrate. When the title was changed to magistrate judge in 1990, I was in the government, and I remember telling those under my supervision that it was very important that they always call magistrate judges judge and magistrate judge because some of them were very sensitive about that. Maybe they've lost that sensitivity over the years, but it's been 35 years since the title was changed to magistrate judge, not just magistrate. I have a feeling that some of them, including some former magistrate judges who are now Article 3 judges, continue to think that that's a bad thing to call them magistrates. So maybe you want to pay attention to that. And if you ever find yourself before an Article 1 magistrate judge, you might want to be careful about that. Okay. I'll take that under advisement. We're not picky about such protocols, but some people are. If you have any last things you'd like to squeeze in before your time, why don't you just give us whatever closing you'd like. Well, I wanted to conclude by saying that there was no abusive discretion by the district court in ordering civil penalties or discouragement, nor is there any error in concluding that there was a – You made this argument about how he did the promotion during limitations period. I mean, the district court didn't really say that that was what made him a necessary participant in the sales, right?  I didn't say that. That – right. But there are two different things there. I mean, the necessary participation as far as his Section 5 liability, that was complied as a whole host of actions that he engaged in. And so I – including, you know, that the magistrate – or excuse me, the court was aware of his promotional activity that occurred in July of 2010. He was aware of it, but you were just describing – you said tier 3 penalties are appropriate for a Section 5 violation. So the penalties are imposed for the Section 5 violation, right? Yes. The conduct that makes him in violation of Section 5, at least that the district court found, preceded the limitations period. You're saying we can look at the record and see that there was also conduct during the limitations period. I think there's – you know, the district court, I mean, and magistrate were aware – magistrate judge were aware of the conduct that occurred throughout the period and looked at his entire course of conduct in determining that the tier 3 penalty was appropriate. But – and I don't think there was any abuse of discretion in that regard. Okay. All right. Well, thank you very much, Mr. Silverman. Mr. Malazzo, you have three minutes for rebuttal, and we're going to keep that tight. I just have a couple of points. The first is when we're talking about the alleged promotion during the statute of limitations period. The district court in the summary judgment order specifically found that there was no – there was really no misleading statement in there and that there was no sign for negligence. So it refused to grant, you know, or find that that statement was a violation of Section 10B. So, again, now that's something else that can't be used to pump up the tiers of the penalties for a strict liability statute, which is – That might not be the best idiom for you to use right there. Pump up? Yes. True. So the court can't use that July 2010 statement to increase the liability to which you're free to find that egregious conduct. And I have nothing further to go on. Okay. Thank you very much. Thank you to both parties for your very helpful arguments, in particular, Mr. Silverman, during these days of the shutdown. Thank you for coming in. We will take the case under advisement. Thank you.